IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| YANCEY L. WHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.  2:20-CV-00018-AGF |
| | ) | |
| DAN REDDINGTON, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on the pro se petition of Missouri state prisoner

Yancey L. White for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  In January

2011, Petitioner was convicted by a jury of three counts of first-degree robbery and three

counts of armed criminal action.  Petitioner was sentenced to sixteen years on each count

of first-degree robbery and three years on each count of armed criminal actions all

sentences to be served concurrently.

In his federal habeas petition, Petitioner asserts twenty-three grounds for relief for

ineffective assistance of counsel and sixth amendment constitutional violations.

Respondent argues that most of Petitioner's claims have been procedurally defaulted, and

those that were properly preserved for federal habeas review should be denied because

the state court's adjudication was reasonable.  For the reasons set forth below, habeas

---

[1]     Petitioner's first named is spelled as both "Yancy" and "Yancey" repeatedly in the state and federal court record.  We have utilized the spelling Petitioner used in his federal habeas petition.

relief will be denied.

## **BACKGROUND**

The pertinent facts, as summarized by the Missouri Court of Appeals in

Petitioner's direct appeal, state the following:

During the three-day period of February 3-5, 2010, Melissa Craft, Matthew Patterson, and Ada Brooks were the victims of three separate robberies in the City of St. Louis. Police officers' investigations into those robberies eventually focused on [Petitioner]. After obtaining a photograph of [Petitioner], Detective Steven Ortbals of the St. Louis Metropolitan Police Department prepared a photographic lineup containing [Petitioner's] photograph and three others. On February 7, 2010, Detective Ortbals showed the photographic lineup to Patterson. Patterson immediately identified [Petitioner] as the perpetrator of his robbery with "99.9 percent" certainty. Detective Ortbals also showed a copy of the same photographic spread to Brooks, who also identified [Petitioner] as the man who robbed her.

Detective Ortbals placed a "wanted" for [Petitioner] in the Regional Justice Information Services (REJIS) database. On February 9, 2010, officers from the St. Louis Metropolitan Police Department "most violent offenders unit" arrested [Petitioner] in Pine Lawn, Missouri. Police officers brought [Petitioner] to a stationhouse in St. Louis, where Detective Ortbals spoke with him briefly before [Petitioner] requested a public defender. Detective Ortbals informed [Petitioner] that the police officers wanted him to participate in a lineup, but [Petitioner] refused without an attorney present. When Detective Ortbals contacted the public defender's office, the public defender's office informed them that it would not represent [Petitioner] until the State filed formal charges against him. Detective Ortbals relayed this information to [Petitioner] and asked him if he wished to contact a private attorney. [Petitioner] stated that he did not have private counsel. Detective Ortbals also contacted the Circuit Attorney's office, which informed him that it would not formally charge [Petitioner] prior to a lineup.

[Petitioner] continued to refuse to participate in the lineup, went "limp noodle," and police officers dragged him into the lineup room. Once inside, [Petitioner] refused to stand in position, and two police officers had to hold him up. An officer also physically turned [Petitioner's] face towards the one-way mirror.

2

Both Patterson and Brooks viewed the lineup from behind a one-way mirror.  At the time that Patterson viewed the lineup, [Petitioner] was on his knees.  Police officers held [Petitioner] in place.   Patterson identified [Petitioner] as the perpetrator.   When Brooks first viewed the lineup, [Petitioner] was standing upright.  After she identified [Petitioner] he began "scooting all down," and police officers had to hold him up.   Brooks identified [Petitioner] as the man who robbed her "within three seconds."

Melissa Craft did not view the physical lineup, but an officer showed Craft a six-person photographic lineup on February 10, 2010.  Craft quickly identified [Petitioner] as the man who robbed her.

The State charged [Petitioner] with one count of first-degree robbery and one count of armed criminal action for each of the three victims, for a total of six counts.[2]

Doc. No. 22-6.

## **Motion to Suppress**

Prior to trial, Petitioner filed a motion to suppress all identification evidence from the photo and live line-ups arguing in part that the out-of-court identifications were inherently suggestive and conducive to mistaken identification.[3]  Pet'rs Mot. to Suppress Identification, Doc. No. 22-3 at 18.  Specifically, trial counsel argued that the live physical lineup was improper because Petitioner was refused an attorney despite multiple requests; the prosecutor told police officers to put Petitioner in the line-up by any means necessary; and police officers physically forced Petitioner to participate in the line-up,

---

[2]     The State also charged [Petitioner] with an additional count of receiving stolen property, but the trial court severed this count before trial.

[3]     Petitioner also brought a second motion to suppress physical evidence seized during Petitioner's arrest that is not relevant to Petitioner's cognizable federal habeas claims.  Pet'rs Mot. to Suppress Evid., Doc. No. 22-3 at 23.  This suppression motion was also denied by the trial court.

holding him in choke hold and physically forcing his face forward.  *Id.; see also* Doc. No. 16-4 at 2.  Trial counsel argued that Petitioner's equal protection and due process rights were violated by these law enforcement actions.  *Id.*

The motion to suppress was heard by the trial court on January 3-4, 2011.[4]  Trial Tr., Doc. No. 22-1, at 23, 71.  Petitioner's trial counsel called Detective Michael Strong, Detective Steven Ortbals, and Sergeant Thomas Lake, all of whom were involved with Petitioner's live line-up.  The officers testified that prior to the live line-up, Petitioner requested an attorney.  The officers called the public defenders' officer but were told that because Petitioner had not been formally charged by the circuit attorney, no lawyer could be sent out until after he was charged.  *See* id. at 26, 36.  Petitioner was informed of this, and the officers asked Petitioner if he had private counsel that he would like to contact and Petitioner stated he did not.  *Id.*  Detective Ortbals then contacted the circuit attorney's office and advised them of the situation.  *Id.* at 36. The circuit attorney advised Detective Ortbal that a physical line up was needed.  *Id.*  Petitioner refused to participate in the lineup and repeatedly requested an attorney.  *See id* at 26.  Detective Ortbal then contacted his lieutenant, who, in turn, contacted internal affairs. *Id.* at 36.

Detective Lake, a detective assigned to the Internal Affairs Division, testified that in response to the lieutenant's call he went to the St. Louis Justice Center where the

---

[4]    The motions to suppress hearings occurred concurrently with trial.  The initial hearing took place outside the presence of the jury after some initial voir dire, and the remainder of the hearing occurred outside the presence of the jury prior to opening statements.

officers were attempting to conduct the lineup . *Id.* at 28.  He testified that his division is

called,

> not only to insure that the person that's refusing is treated fairly but that the
> officers use our policies and procedures in order to move forward and make
> sure that when if the person that is refusing to be in a lineup wants to make a
> complaint at a later date that we were there to witness the events that
> occurred.

*Id.*  Upon arriving at the justice center, Detective Lake spoke with Petitioner.  *Id.*

at 27-28.  He testified to the following regarding their conversation,

> I explained to him that he could not refuse to be in a lineup, that the public
> defender's office was called, that they were not going to come, and, probably,
> the reason they weren't going to come was because he has not been charged,
> that the police can't charge him until we put him in a lineup.
>
> So he has a good shot of possibly walking out of here if he just stands up in
> a lineup because if he's not picked out, they cannot arrest him, but if we have
> to physically hold him in that lineup, he may, probably, very well likely get
> picked out and then he will be booked and held over.

*Id.* at 28.  Petitioner still refused to cooperate in a physical line up.  Detective Lake

instructed the officers to handcuff Petitioner behind his back, and once they were in the

lineup room, instructed the other participants to hold their hands behind their backs to

simulate the same.  *Id.*  He explained that prior to going into the lineup room, Petitioner

went "limp noodle" and "refused to stand up or use his own muscles to stand…he

basically, became like dead weight" and the had to physically drag Petitioner into the

lineup room.  *Id.* at 29-30.

Detective Strong and another detective, Detective Davis, were in the room with

the line-up participants.  Detective Strong testified that Petitioner was "very

uncooperative" and "wouldn't stand up on his own."  *Id.* at 25.  He explained that he and

5

Detective Davis had to physically hold Petitioner up and turn his head toward the one-way mirror.  *Id.*  Detective Strong acknowledged that Detective Davis had placed an arm around Petitioner's head to hold him up because Petitioner kept purposefully going limp and falling to the ground, but denied Petitioner was in a headlock.[5]  *Id.* at 26-27.

Detective Ortbals testified that three witnesses—Mr. Patterson, Ms. Brooks, and Ms. Bowers—participated in the lineup identification.  *Id.* at 36.  Detective Ortbals informed the witnesses that there was a physical lineup with individuals that matched the descriptions the witnesses provided and that the subject may or may not be in the room.  *Id.*  Mr. Patterson and Ms. Brooks quickly identified Petitioner.  *Id.* at 36-37.  At the time Ms. Bowers viewed the lineup, Petitioner was not standing up.  She asked if the officers could instruct him to stand up, but Petitioner refused.  Detectives Strong and Davis attempted to bring Petitioner to a stand but struggled due to Petitioner's weight and resistance.  Ms. Bowers chose not to make any identification because of the situation.[6]  *Id.* at 37.

Mr. Patterson also testified at the motion to suppress hearing.  He stated that prior to viewing the lineup the officers told him that there may be someone in the lineup the

---

[5]    A photograph of the lineup shows Detective Davis holding Petitioner up in what appears to be a headlock, and Detective Strong holding Petitioner up by his right arm.  Doc. No. 16-4, Def.'s Ex. C.

[6]    Terry Bowers was robbed on February 3, 2010, in the same location as Mr. Patterson.  She gave a description matching Petitioner, but was unable or unwilling to identify Petitioner in the lineup.  Doc. No. 22-1 at 5.  Petitioner was not charged with Ms. Bowers' robbery.  *Id.*  at 38.

officers would need to restrain but did not tell him that the person restrained was the person he previously identified in a photo lineup[7] or that the person restrained was the robber. *Id.* at 75. He stated that the fact that Petitioner was being held by the officers did not influence his identification.

> PROSECUTOR: [D]id the fact that he was in that position, did that influence your decision to pick him out at all?
>
> PATTERSON: No. That face just jumped right out at me.

*Id.*

Ms. Brooks also testified. She confirmed that she identified the Petitioner in a photo lineup and then was asked to participate in a live lineup. *Id.* at 77. She stated that Petitioner was standing up when she walked in, and she immediately recognized him. *Id.* After she identified him, Petitioner started "scooting all down," and the officers had to try to get him back up. *Id.*

Lastly, Petitioner testified that he told the officers he would not participate in a lineup without counsel and requested an attorney. *Id.* at 81. He claimed that the internal affairs officer that spoke with him tried to threaten him into cooperating and told Petitioner that "the last person tried to refuse and he ended up with a busted head." *Id.* at 82. He testified that the officer dragged him into the lineup and "[Detective] Davis, he had me in a choke-hold and twisted my neck and was trying to force me to look forward." *Id.* He confirmed that he went limp on his own accord. *Id.* at 83. Petitioner stated that

---

[7]    As discussed further below, Patterson identified Petitioner in a phot array prior to the live lineup.

7

after a minute or two, Detective Orbtals came into the room and informed them that

Petitioner had been identified.  *Id.* at 82. Petitioner testified that he suffered minor

injuries, "just scratched on my arm from being held in place."  *Id.*

Petitioner's trial counsel acknowledged that the current case law states that the

right to counsel does not attach until adversary judicial proceedings begin, and under

Missouri law, that would be when the complaint is filed, but argued that a physical lineup

is "an extremely critical stage of the proceedings," and asked the court to carve out an

exception.  *Id.* at 86.

The trial court denied Petitioner's motions to suppress, articulating the following

finding on the record:

> The Court has considered the relative credibility of the witnesses here and
> the totality of the circumstances involved in the seizure of these items and
> the development of the photo spreads and the live lineups and finds that
> Defendant occasioned his own stand out in the lineup by his behavior under
> *Radford*.

> The Court further finds that the State has met its burden in this hearing and
> the Motions to Suppress Identification and Motion to Suppress Physical
> Evidence are denied at this time.

*Id.* at 88.

## Trial and Sentencing

A jury trial was held on January 3-5, 2011.  The three victims, Melissa Craft,

Matthew Peterson, and Ada Brooks, testified at trial.  The Missouri Court of Appeals

summarized their testimony as follows.

> At trial, during Craft's testimony, the State introduced evidence of the
> photographic lineup from which Craft had identified [Petitioner].  Craft
> testified that she selected [Petitioner] from the photographic lineup.  Craft

also identified [Petitioner] in court.  [Petitioner] objected to the introduction of the exhibit, Craft's identification of [Petitioner] in the photographic lineup, and Craft's in-court identification of the [Petitioner].   The trial court overruled each objection.

During Patterson's testimony, the State introduced into evidence the photographic lineup from which Patterson had identified [Petitioner] and a photograph of the live lineup that [Petitioner] viewed.  While viewing the photograph of the live lineup, Patterson indicated that [Petitioner] was the person whom he had identified as the robber.  [Petitioner] objected to the introduction of each exhibit and requested a continuing objection to "any identification evidence at all."  The trial court overruled the objections.
Finally, Brooks identified Defendant in court as the man who robbed her. [Petitioner] objected and requested a continuing objection, but the court overruled the objection.  The State entered into evidence the photographic lineup that Brooks used to identify [Petitioner].  Brooks verified that she selected [Petitioner] from the photographic lineup.  She also testified that she identified [Petitioner] during the live lineup.

Doc. No. 22-4 at 4.

Petitioner also testified at trial.  *See* Doc. No. 21-1, 138-51.  Petitioner denied his involvement in the robberies.  *Id.*  Petitioner testified that during Mr. Patterson's robbery he was at his girlfriend, Rita Sylvester's house and during Ms. Brooks' robbery he was at his cousin, Shermon Felton's house.  *Id.* at 138.  He testified that Ms. Sylvester and Mr. Felton were not at the trial because his family ties were "broken" during his federal incarceration, and he had no contact with Mr. Felton.[8]  *Id.* at 139-40.  Petitioner also testified that he believed, based on his own legal research during prior incarcerations, that he had a right to attorney during a lineup.

---

[8]     Trial counsel tried to introduce evidence as to why the witnesses were not present, arguing that the anticipated testimony was that they were criminals themselves, thus unlikely to avail themselves to a court proceeding.  However, the trial court agreed with prosecutions objections on the basis of speculation, and did not allow this testimony.

On January 5, 2011,  the jury returned a verdict of guilty on the three counts of armed robbery and the three counts of armed criminal action.  On January 19, 2011, Petitioner filed a motion for judgment of acquittal notwithstanding the verdict, or in the alternative, a new trial arguing in part that the trial court erred in denying Petitioner's motions to suppress.  Doc. No. 22-3 at 99-102.  The motion was denied.  Sentencing Tr., Doc. No. 22-2 at 3.

On February 25, 2011, Petitioner was sentenced to sixteen years on each count of first-degree robbery and three years on each count of armed criminal actions all sentences to be served concurrently.  At sentencing, Petitioner testified that his trial counsel did everything Petitioner asked him to do prior to trial.  *Id.* at 6.  Petitioner further affirmed on the record that he had no reason to think that his trial counsel did not represent him to the best of counsel's ability.  *Id.* at 7.  The Court found that there was no probable cause to believe that defendant received ineffective assistance of counsel.  *Id.*

**<u>Direct Appeal</u>**

On direct appeal, Petitioner, through appointed counsel, argued two points of appeal.  In his first point, Petitioner claimed that the trial court erred in (1) denying his motion to suppress his pre-trial identification from the live lineup; (2) overruling his objections to the admission of evidence regarding his pre-trial identification from the live lineup; and (3) overruling his objections to his in-court identifications.  Petitioner argued that the identification evidence was inadmissible because the live lineup violated his Sixth Amendment right to counsel.

In his second point on appeal, Petitioner argues that the trial court erred when it admitted the in-court identifications by Patterson and Brooks because the out-of-court identification procedures, including both the photo lineup and the live lineup, "were so suggestive as to create a substantial likelihood of [Petitioner's] misidentification."  Pet'r's Appeal Br., Doc. No. 22-4 at 16.

The Missouri Court of Appeals affirmed the decision of the trial court.  The appellate court found that the Sixth Amendment guarantees the accused the right to counsel at all "critical" stages of a criminal proceeding, but under *Kirby v. Illinois*, the right to counsel does not attach until "adversarial judicial proceedings have been initiated against [the defendant]."  406 U.S. 682, 688 (1972).  The appellate court also noted that, "Missouri courts have long held that 'a pre-indictment, pre-information lineup is not a stage of the prosecution at which defendant is constitutionally entitled to counsel.' *State v. Quinn*, 594 S.W.2d 599, 604 (Mo. banc 1980)."  Doc. No. 22-6 at 6.  Given that Petitioner had not yet been charged at the time of the lineup, the appellate court determined that Petitioner's Sixth Amendment right to counsel had not attached and affirmed the trial court's denial of the motion to suppress.  *Id.*

With respect to Petitioner second point on appeal, the appellate court determined that the photographic lineup used by Patterson and Brooks was not unduly suggestive. The appellate court also found that any suggestiveness that resulted from the live lineup was due to Petitioner's own behavior, and in accordance with *State v. Lanos*, 14 S.W.3d 90, 95 (Mo. Ct. App. 1999) and *State v. Radford*, 559 S.W.2d 751,753 (Mo. Ct. App. 1977), a defendant may not claim that a lineup is impermissibly suggestive if the

11

suggestiveness is due to defendant's own obstinate behavior.  As such, the Court denied Petitioner's second point of appeal.  Doc. No. 22-6 at 10.

**State Habeas Petitions**

On July 23, 2012, Petitioner filed a pro se habeas petition in the Circuit Court of the City of St. Louis ("motion court").  Doc. No. 22-11 at 7-77.  Plaintiff's pro se motion raised fifteen claims of ineffective assistance of counsel, nine claims of prosecutorial misconduct, and a claim of trial court error for failure to submit the alibi witness jury instruction.  *Id.*  On August 1, 2012, the circuit court appointed counsel to represent Petitioner in his state proceedings.  *Id.* at 77.  On September 25, 2012, the motion court granted appointed counsel's motion for additional time to file an amended habeas petition.  *Id.* at 78-79.  On November 1, 2012, Petitioner's amended habeas petition was filed.  *Id.* at 81-96.  The amended petition raised three claims: (1) trial counsel was ineffective by failing to locate, interview, subpoena and call as witnesses Kevin Davis, Randi Faulkner, Bernard Davis, Shermon Felton, and Alexander White; (2) trial counsel was ineffective by failing to advocate that Petitioner should receive a more favorable sentence by calling Ken Nelson and Joann Moore to testify on his behalf; (3) trial counsel was ineffective by failing to object and request a mistrial when the jurors saw Petitioner handcuffed, shackled, and escorted by deputies and wearing a wristband that identified him as an inmate.  *See id.*

Evidentiary Hearing

A partial evidentiary hearing was held on November 22, 2013. [9]  *Id.* at 131; Doc.
No. 22-7 at 22-128.  At the hearing, Petitioner testified that he was at Melanie Felton-
Harris's house in East St. Louis, Illinois from approximately 12:00 p.m. to about
midnight.  *See* Doc. No. 22-7 at 34-36.  He testified that his cousins, Shermon Felton and
Alexander White, were also there during that time.[10]  *Id.* at 35-36.  Petitioner claimed that
he told his trial counsel about Mr. Felton and Mr. White, and other potential alibi
witnesses prior to trial.  *Id.* at 40-41.

He testified that in February 2010, he worked at a McDonald's where he received
recognition for preventing a burglary.  *Id.* at 38-39.  He also testified that he would escort
his female manager to and from her car at night because it was a dangerous
neighborhood.  *Id.* at 39.  Petitioner stated that he told his trial counsel about his
McDonald's supervisor, Ken Nelson, and manager, Joann Moore, prior to trial as
potential character witnesses.  *Id.*

In sum, Petitioner testified that he notified his trial counsel about several alibi and
character witnesses that he wanted to have testify on his behalf at trial, but his trial
counsel failed to locate these witnesses and as a result Petitioner was prejudiced.  *Id.* at

---

[9]     Three witnesses, Ken Nelson, Joann Moore and Alexander White were not called.
Mr. Nelson and Ms. Moore were subpoenaed but did not appear, and the Court issued a
writ of body attachment.  *Id.* at 131.  Mr. Nelson's testimony was ultimately admitted via
deposition.  *Id.* at 165, 178.

[10]     Petitioner testified that Mrs. Felton-Harris left to attend a party elsewhere at
approximately eight o'clock p.m.

13

50.  Petitioner also testified that on the last day of trial the jury saw him in shackles and handcuffs during a recess in a public hallway, and his inmate wristband was visible during the trial.  *Id.* at 51-54.  Petitioner claims he told trial counsel about the hallway incident and trial counsel failed to take any action.  *Id.* at 54-55.

Petitioner's purported alibi witness, Shermon Felton, testified that on February 5, 2010, Petitioner arrived at Felton-Harris home "in the evening time," then later testified that Petitioner arrived around 1:00 p.m. or 2:00 p.m. and stayed for a few days.  *Id.* at 86-88.  His testimony varied about which day of the week, which times he saw Petitioner, and how long Petitioner stayed at the Felton-Harris house.  *See id.* 86-103.

Petitioner's trial counsel, Jeff Estes, testified that he assigned his investigator to contact many of the witnesses that Petitioner had identified, but his team was not able to contact any of them.  *Id.* at 113-16.  He admitted that he did not ask his investigator to contact the character witnesses, Ken Nelson or Joann Moore.  *Id.* at 114.  He also admitted that he did not subpoena Shermon Felton, Ken Nelson, or Joann Moore to testify at the trial.  *Id.* at 115-16.  He stated that he did not contact Mr. Nelson or Ms. Moore prior to trial because they were just character witnesses, and generally character evidence is inadmissible in a case in chief, and it "didn't even cross [his] mind" to call them for sentencing.  *Id.* at 121.  He also testified that in his 23-year experience as a public defender, Petitioner's sentence "wasn't too bad, considering his priors and the charges."  *Id.* at 122.

Mr. Estes testified that he did not recall ever becoming aware during trial that the jurors had seen Petitioner in leg and wrist shackles.  *Id.* at 117-18.  He states that had he

14

known, he would have objected and made a record.  *Id.* at 124.

The evidentiary hearing was continued and ultimately concluded with the filing of Ken Nelson's deposition on March 7, 2017.  *See id.* at 165, 178.  Mr. Nelson testified that Petitioner was one his best employees and was very conscientious, helpful, and trustworthy.  *See* Doc. No. 22-11, 137-60.  On July 10, 2017, the motion court denied petitioner's habeas petition.  *Id.* at 178-93.

First Appeal

On August 29, 2017, Petitioner appealed the motion court's ruling.  *Id.* at 196-99.  On August 7, 2018, the Missouri Court of Appeal, Eastern District reversed and remanded the motion court's ruling because Petitioner's appointed counsel filed an untimely[11] amended habeas petition, and the motion court did not conduct an independent abandonment inquiry as required.  *White v. State*, 555 S.W.3d 483 (Mo. Ct. App. 2018); Doc. No. 22-7 at 133-36.  The appellate court explained that when an untimely amended petition is filed, the circuit court must determine whether petitioner was abandoned.  *White,* 555 S.W.3d at 485-86.  If the court finds that movant was abandoned, the court should permit the untimely filing of the amended motion, but if the court finds that movant was not abandoned, the court should not permit the filing of the amended motion and should proceed with adjudicating petitioner's initial motion.  *Id.* at 486.

---

[11]     Appointed counsel filed the amended petition one day late.

Proceedings and Opinion on Remand

On November 26, 2018, in compliance with the mandate issued by the appellate

court, the motion court held a hearing for the limited purpose of determining whether

Petitioner was abandoned when appointed counsel filed an untimely amended post-

conviction motion.  Doc. No. 22-7 at 13-14.  At the hearing, Petitioner's appointed

habeas counsel testified that the amended motion was filed due to a mistake on her part

and was not attributable to Petitioner.  *Id.* at 144.  On December 12, 2018, the motion

court found that Petitioner was abandoned, thus it accepted the untimely amended motion

and again denied Petitioner's habeas petition on the merits.  Doc. No. 22-7 at 143-59.

As to Petitioner's first claim, the circuit court found that trial counsel was not

ineffective for failing to call the numerous witnesses, including Shermon Felton, because

Petitioner failed to meet its burden to show trial counsel's performance was unreasonable

and that he was prejudiced.  The motion court concluded that Petitioner's self-serving

testimony at the evidentiary hearing was not persuasive as to how such witnesses would

have testified had they been called, nor did his testimony establish that they would have

been willing to appear and testify on his behalf.  *Id.* at 157.  With respect to Shermon

Felton, the motion court found that his testimony was entitled to very little weight

because Felton appeared to have his days and dates confused.  *Id.*

The motion court likewise found Petitioner's second claim without merit, stating

that "the Court does not believe the testimony of Mr. Nelson would have been likely to

change the outcome," and trial counsel's assessment that the sentencing result was

16

"pretty good, all things considered" was an accurate assessment, especially given that the state was seeking thirty years on each count.  *Id.* at 157-58.

As to Petitioner's final claim, the motion court found that Petitioner's claim with respect to the jurors seeing his inmate wristband was based on "total speculation" and "more, importantly, it was total speculation that any of the jurors attached any negative significance to the wristband or even knew what it was."  *Id.* at 158.  The motion court likewise found that Petitioner's claim that the jurors saw him in shackles was without merit based on trial counsel's testimony.  *Id.*  It further noted that any claim of prejudice was speculative, because state law had established that "it is normal, desirable and necessary to handcuff prisoners while they are being taken from one place to another and a jury knows this."  *Id.* at 158-59 (citing *Lytle v. State*, 762 S.W.2d 830,834-35 (Mo. Ct. App. 1988).  On January 14, 2019, Petitioner filed a notice of appeal.

<u>Second Appeal</u>

In Petitioner's second appeal on his post-conviction motion, he argued that the motion court clearly erred in denying his habeas petition because he was denied his right to effective assistance of counsel and due process in that (1) trial counsel failed to locate, subpoena, and call Shermon Felton as a witness; (2) trial counsel failed to object and request a mistrial when the jurors saw Petitioner handcuffed, shackled, escorted by deputies in the hallway, and wearing a wristband identifying him as incarcerated; and (3) trial counsel failed to advocate that Petitioner receive a more favorable sentencing disposition by calling Ken Nelson.  Petr's Habeas Appeal Br., Doc. No. 22-8.  On

September 10, 2019, the appellate court affirmed the motion court's decision.  *White v. State*, 583 S.W.3d 508 (Mo. Ct. App. 2019); Doc. No. 22-10.

**Federal Habeas Petition**

As noted above, Petitioner raises numerous claims alleging ineffective assistance of counsel and sixth amendment constitutional violations.  In total, Petitioner raises twenty-three grounds for federal habeas relief, as follows: (1) trial, appellate, and post-conviction counsel were ineffective for failing to raise a claim challenging the use of Petitioner's clothing at trial; (2) trial, appellate, and post-conviction counsel were ineffective for failing to raise a claim challenging the territorial jurisdiction of the St. Louis Police department to arrest Petitioner in Pine Law, Missouri; (3) trial, appellate, and post-conviction counsel were ineffective for failing to demand a preliminary hearing; (4) trial counsel was ineffective for failing to challenge admission of unreliable identification evidence; (5) Petitioner's Sixth Amendment right to counsel was abridged when the Missouri Public Defender's Office refused to provide him counsel at the live lineup; (6) trial, appellate, and post-conviction counsel were ineffective by failing to challenge the excessive force used by the St. Louis Police Department when forcing Petitioner into the live lineup; (7) trial, appellate, and post-conviction counsel were ineffective for failing to challenge the fact that the eye-witnesses discussed the robberies and identifications with each other; (8) trial, appellate, and post-conviction counsel failed to raise a claim that Petitioner's Fourteenth Amendment equal protective rights were violated because he was not provided state-funded counsel at the time of pre-indictment witness lineup; (9) trial, appellate, and post-conviction counsel were ineffective for

18

failing to request a jury instruction about the unreliability of eyewitness evidence; (10) trial, appellate, and post-conviction counsel were ineffective because a copy of jury instruction number seven was not included in his legal file for direct appeal; (11) trial counsel was ineffective for failing to investigate and present Shermon Felton as an alibi witness; (12) trial, appellate, and post-conviction counsel were ineffective for failing to challenge that Petitioner was unlawfully held because the St. Louis Police Department did not have an arrest warrant,[12] (13) trial, appellate, and post-conviction counsel were ineffective for failing to challenge the testimony of Detective Steven Ortbals, Detective Damon Willis, and Detective Michael Strong when they testified that no search of Petitioner's home occurred on February 9, 2010; (14) trial counsel was ineffective for failing to object to the introduction of a photograph of Adam Wells, a man who was located by police during the investigation, but did not match the description of the robbery suspect; (15) trial counsel was ineffective for failing to object when police officers testified that they received consent to enter Petitioner's girlfriend's home, and appellate, and post-conviction counsel were ineffective for refusing to raise this issue in post-conviction motions; (16) Petitioner's Sixth Amendment confrontation clause was violated because the State did not call Jesses James Jones to testify (a man who attempted to cash a check Petitioner allegedly stole); (17) trial counsel was ineffective in failing to

---

[12]     Ground 12 was not included in Petitioner's initial federal habeas petition, but was included in his memorandum of support, which the Court granted Petitioner leave to file. *See* Doc. No. 16 at 36-37; Doc. No. 8.  Petitioner's memorandum in support was filed June 23, 2020, Respondent's opposition was filed September 16, 2020.  Respondent did not address this ground in its opposition.

object when the jury saw Petitioner in cuffs and shackles in the hallway and saw him wearing an inmate wristband during trial; (18) trial counsel was ineffective for failing to call Ken Nelson as a witness at sentencing; (19) Petitioner's Sixth Amendment right to counsel was violated because his trial, appellate, and post-conviction counsel operated under a conflict of interest in that they all worked for the Missouri Public Defender's Office; (20) trial counsel was ineffective for failing to object to the prosecutor's remarks in closing arguments related to the credibility of the witnesses and Petitioner; (21) trial counsel was ineffective for allowing the Prosecution to shift the burden of proof onto Petitioner;[13] (22) trial counsel was ineffective in allowing prosecution to strike a black juror; [14] (23) trial counsel was ineffective for failing to allow Petitioner to address the Court at sentencing.

Respondent asserts that only three of Petitioner's grounds, Grounds 11, 17, and 18, have been preserved for federal review, the others have been procedurally defaulted.

## DISCUSSION

## Legal Standard

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28

---

[13]     Ground 21 was not included in Petitioner's initial federal habeas petition, but was included in his memorandum of support.  Doc. No. 50-52.  Respondent did not address this ground in its opposition.

[14]     Ground 22 was also not included in Petitioner's initial federal habeas petitioner, but was included in his memorandum of support.  Doc. No. 16 at 52-53.  Respondent did not respond to this ground in its opposition.

U.S.C. § 2254(a).  Where a claim has been adjudicated on the merits in state court, the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that habeas

relief cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the
Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court
proceedings.

28 U.S.C. § 2254(d).

In order to show that the state court's decision was contrary to or an unreasonable

application of federal law, the petitioner must show that the claimed violation was based

on a federal law that was clearly established by the Supreme Court *at the time* the state

court decided these claims. *Williams v. Taylor*, 529 U.S. 362, 380-81 (2000).  Further, if

the correct legal standard is applied to a claim, but there is no Supreme Court case with

similar facts, the state court's rejection of the claim is not "contrary" to federal law. *Id*. at

405-06.

The unreasonable application standard applies if the state court has applied the

correct standard, but applied it to the facts of the case in an unreasonable manner. *Id*. at

409-10.  An unreasonable application "must be objectively unreasonable, not merely

wrong; even clear error will not suffice." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728

(2017).  The state's factual determinations are presumed correct, and the petitioner bears

the burden of rebutting that presumption by clear and convincing evidence. *Nicklasson v.*

*Roper*, 491 F.3d 830, 834 (8th Cir. 2007); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). The existence of some contrary evidence does not establish that a state court's factual determination was unreasonable, nor is the determination unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

<u>Procedural Default</u>

Under the doctrine of procedural default, a federal habeas court is barred from considering the merits of a claim not fairly presented to the state courts, absent a showing by the petitioner of cause for the default and prejudice resulting therefrom, or that he is actually innocent, such that a miscarriage of justice would result by failing to consider the claim. *E.g., Murphy v. King*, 652 F.3d 845, 849-50 (8th Cir. 2011). In order to exhaust a federal claim, "the petitioner must present the same facts and legal theories to the state court that he later presents to the federal courts." *Stephen v. Smith*, 963 F.3d 795, 801 (8th Cir. 2020) (citations omitted).

"Out of respect for finality, comity, and the orderly administration of justice, federal courts may excuse procedural default only if the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Shinn v. Ramirez*, — U.S. —, 142 S.Ct.1718, 1733 (2022) (citing *Dretke v. Haley*, 541 U.S. 386, 388 (2007) and *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)) (internal quotations omitted). To demonstrate cause, the Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate

prejudice, the Petitioner must show that the claimed constitutional violation "worked to his *actual* and substantial disadvantage." *Id.* at 494. Demonstrating that the errors at trial created a "*possibility* of prejudice" is not sufficient. *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). "If a prisoner fails to demonstrate cause, the court need not address prejudice." *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007).

As to the cause of default, "attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel." *Davila v. Davis*, — U.S. —, 137 S.Ct. 2058, 2065 (2017) (citations omitted). Ineffective assistance of postconviction counsel generally does not constitute cause for procedural default because there is no Sixth Amendment right to postconviction counsel, therefore there was no deprivation of a constitutional right to counsel. *Dorsey v. Vandergriff*, 30 F.4th 752, 755 (8th Cir. 2022) (citing *Thompson*, 501 U.S. at 752).

The Supreme Court carved out a narrow exception to this rule in *Martinez v. Ryan*, providing that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. 1, 17 (2012). This exception was expanded in *Trevino v. Thaler*, which held that the *Martinez* exception applies where state law explicitly prohibits prisoners from bringing claims of ineffective assistance of trial counsel on direct appeal and where "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of

ineffective assistance of trial counsel on direct appeal." 569 U.S. 413, 429 (2013).  Under Missouri law, a post-conviction proceeding is the exclusive procedure for pursuing an ineffective assistance of counsel claim.  *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006); Mo. S. Ct. Rule 29.15(a).

A Petitioner claiming ineffective assistance of postconviction counsel as the cause for his procedural default must demonstrate the following:

> (1) the claim of ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the "initial" review proceeding with respect to the "ineffective-assistance-of-trial-counsel claim."

*Marcyniuk v. Payne*, 39 F.4th 988 (2022), *petition for cert. filed*, (citations omitted).

**<u>Procedurally Defaulted Claims</u>**

Grounds 1, 2, 3, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 19, 20, 21, 22, and 23 were not raised on direct appeal, in Petitioner's amended state habeas petition, or on Petitioner's state habeas appeal.  Petitioner acknowledges that these claims are procedurally defaulted but argues that the procedural default should be excused under *Martinez* because his appellate and postconviction counsel were ineffective for failing to raise these claims in their respective proceedings.

Petitioner states that the "record is undeveloped and needs to be expanded" as to these claims and the ineffectiveness of his postconviction counsel.  However, the Supreme Court recently held that "under § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel."  *Shinn*, 142 S.Ct.

at 1734.  Thus, in determining whether postconviction counsel was ineffective under *Martinez*, the Court is limited to the record before it.  In any event, the record is fully developed with respect to these claims.

With respect to Petitioner's claims regarding appellate counsel's performance, the Supreme Court has held that "ineffective assistance of postconviction counsel does not provide cause to excuse the procedural default of ineffective-assistance-of-appellate counsel claims."  *Davila*, 137 S.Ct. at 2060.  The *Davila* Court explained that "if an unpreserved trial error was so obvious that appellate counsel was constitutionally required to raise it on appeal, then trial counsel likely provided ineffective assistance by failing to object to it in the first instance."  *Id.* at 2067-68.  As such, Petitioner can "invoke *Martinez* or *Coleman* to obtain review of trial counsel's failure to object to it in the first instance." [15]  *Id.* at 2068.  Thus, in order to determine whether Petitioner's defaulted claims are excused, the Court need only determine whether postconviction counsel was ineffective in failing to raise the defaulted claims.

In order to demonstrate ineffective assistance of postconviction counsel as the cause for his procedural default, Petitioner must first establish that the underlying claim of ineffective assistance of trial counsel was a "substantial" claim.  *See Marcyniuk*, 39 F.4th at 996.  A "substantial" claim is one with "some merit" and "*Martinez's* some-merit requirement means that whether [Petitioner's] trial counsel was ineffective . . . must at

---

[15]     The *Davila* Court also noted that if the underlying defaulted error was premised on something other than a failure to object, *Martinez* and *Coleman* likewise provide a vehicle for obtaining review in most circumstances.

least be debatable among jurists of reason." *Vandergriff*, 30 F.4th at 756 (internal quotations omitted).

In order to demonstrate ineffective assistance of counsel, "a [petitioner] must show that counsel's performance was deficient," and "that the deficient performance prejudiced [his] defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  When "[c]onsidering an attorney's performance, [the court] must indulge a strong presumption that the conduct was reasonable, and the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). In other words, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757 F.3d 750, 752 (8th Cir. 2014) (citation omitted).  In order to show prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 753 (citations omitted).

For the reasons set forth below, Petitioner has failed to demonstrate that his defaulted claims are substantial claims of ineffective assistance of trial counsel.

Search & Seizure Issues (Grounds 1, 13, and 15)

Petitioner sets forth three claims related to the alleged "illegal search" of his home on February 9, 2010.  Petitioner argues that trial counsel was ineffective for failing to challenge the use of Petitioner's clothing at trial (Ground 1); for failing to challenge the "perjured" testimony of Detectives Ortbals, Willis, and Strong when they testified at trial

26

that no search of the home occurred (Ground 13); and for failing to object on the basis of hearsay when police officers testified that they received consent to enter Petitioner's girlfriend's home (Ground 15).  Petitioner claims that several St. Louis Police officers barged into Petitioner's Pine Lawn home without permission and conducted a widescale search without a warrant or consent.  However, such claims are not supported by the record.

With respect to Ground 1, trial counsel filed a motion to suppress and argued that Petitioner's clothing should be suppressed because they were a result of an illegal search and seizure.  Doc. No. 22-3 at 23.  Trial counsel again raised this argument in the motion for judgment of acquittal notwithstanding the verdict or in the alternative a new trial (hereinafter, "post-trial motion").  Doc. No. 22-3 at 99.  Thus, trial counsel did not "fail to challenge the use of Petitioner's clothing at trial" and any such claim is without merit.

With respect to Grounds 13 and 15, Detective Willis testified at the suppression hearing and at trial that the officers received permission from the woman that answered the door to come into the house; the woman then called for Petitioner to come to the door; Petitioner was compliant during his arrest and agreed to go with the officers; prior to leaving Petitioner asked for his coat which was draped over his shoulders; and no search occurred.  *See* Doc. No. 22-1 at 41, 113.  As discussed above, trial counsel contested the purported illegal search multiple times before the trial court.  As to Ground 15, trial counsel lodged a hearsay objection during trial with respect to the woman's statements which was overruled, *id.* at 133, and raised this argument again in his post-

trial motion.  Doc. No. 22-3 at 100.  Thus, trial counsel did not "fail to object on the basis of hearsay."

Furthermore, Petitioner testified at trial that the officers barged into the house without permission and conducted an illegal search and seizure.  Aside from Petitioner's testimony, there is nothing in the record to suggest that the officers committed perjury, thus trial counsel was not constitutionally deficient for failing to object to the officer's testimony on this basis.  For these reasons, Petitioner has failed to show that these grounds constitute a substantial claim of ineffective assistance of trial counsel.

Pre-Trial Issues (Grounds 2, 3, 6, 7, 8, and 12)

Petitioner sets forth a number of claims regarding ineffective assistance of counsel prior to trial.  Grounds 2, 7, 8 and 12 are wholly unsupported by the record.  With respect to Ground 2, which claims trial counsel was ineffective for failing to challenge the territorial jurisdiction of the St. Louis Police department to arrest Petitioner in Pine Lawn, Missouri, trial counsel specifically challenged the arrest in his motion to suppress.  To the extent Petitioner claims that trial counsel was ineffective in failing to file an interlocutory appeal on this issue, Petitioner has failed to demonstrate how trial counsel's performance was deficient.  Petitioner has offered no evidence that such an appeal would be successful, and in fact the record suggests that the St. Louis City Police Department was accompanied by the Pine Lawn Police Department when the arrest occurred.

With respect to Ground 7, which claims trial counsel was ineffective for failing to challenge the fact that the eyewitnesses discussed the robberies and identifications with each other, the record shows that each eyewitness made an independent identification of

28

Petitioner via a photo lineup prior to ever meeting each other, and the eyewitnesses identified Petitioner in the live lineup one at a time and did not discuss their identifications with one another in between.

In Ground 8 Petitioner claims that his trial and appellate counsel were ineffective for failing to raise a claim that Petitioner's Fourteenth Amendment equal protection rights were violated because he was not provided state-funded counsel at the time of the pre-indictment witness lineup, but trial counsel raised this argument in his motion to suppress and again in the post-trial motion, and appellate counsel raised this argument on appeal.[16]

As to Ground 12, which claims trial counsel was ineffective for failing to challenge that Petitioner was unlawfully held because the St. Louis Police Department did not have an arrest warrant, Petitioner admits that the arrest warrant has been located and as previously discussed, trial counsel argued the unlawful arrest in both the motion to suppress and the post-trial motion.  Thus, Plaintiff has failed to establish substantial claims of ineffective assistance of counsel with respect to Ground 2, 7, 8 and 12.

Grounds 3 and 6 lack both a legal and a factual basis, thus they are not substantial claims of ineffective assistance of counsel.  With respect to Ground 3, Petitioner argues that trial counsel was ineffective for failing to challenge the lack of preliminary hearing. However, Missouri law provides that "a preliminary examination shall in no case be required . . . in any case where an information has been substituted for an indictment." Mo. Rev. Stat. §554.250.  The Missouri Supreme Court has held that this statutory

---

[16]     Whether Petitioner's constitutional rights were violated with respect to the failure to provide counsel at the live line-up is discussed *infra* in Grounds 4 and 5.

language evinces "a legislative intent that the finding and return of an indictment, as evidence of probable cause, should be and are a sufficient and legal substitute for a preliminary examination." *Missouri v. Green*, 305 S.W.2d 863, 868-69 (Mo. 1957). Moreover, "it is uniformly held that a defendant is not entitled to a preliminary hearing as a matter of constitutional right." *Collins v. Swenson*, 443 F.2d 329, 331 (8th Cir. 1971). Here, an information was filed in lieu of an indictment. Doc. No. 22-3 at 11. The record states that Petitioner waived a formal reading of the information and entered a plea of not guilty on June 29, 2010. *Id.* at 3. Thus, trial counsel's failure to challenge the lack of preliminary hearing was not constitutionally deficient performance. Further, Petitioner has failed to show prejudice, he simply states that the preliminary hearing judge "may not have found probable cause thus . . . [Petitioner] stands a bona fide chance of retaining his freedom." Doc. No. 16 at 22.

In Ground 6, Petitioner argues that trial counsel was ineffective by failing to challenge the excessive force used by the St. Louis Police Department when forcing Petitioner into the live lineup. This claim is likewise without merit. First, a claim of excessive force is generally a separate civil action under § 1983 and counsel would have been unable to raise such a claim in Petitioner's criminal action. Second, to the extent the alleged excessive force infected the identifications at the live lineup, trial and appellate counsel argued this multiple times, which the Court addresses *infra* in Grounds 4 and 5. Third, there is little evidence that excessive force was used. While it is true that a detective utilized what appeared to be a headlock to hold Petitioner in place during the lineup, Petitioner testified at the motion to suppress hearing that he was not injured apart

from some minor scratches on his arm.  Thus, Ground 6 does not constitute a substantial ineffective assistance of counsel claim.

Trial Strategy Issues (Grounds 9, 10, 14, 16, 20, 21, and 22)

Petitioner has argued that trial counsel was ineffective with respect to a number of trial strategies and decisions.  With respect to Grounds 9 and 10, Petitioner has failed to demonstrate that he was prejudiced.  As to Ground 9, there is no support in the record that the failure to include a jury instruction regarding the reliability of eyewitnesses prejudiced Petitioner, especially as the majority of trial counsel's closing argument highlighted the inconsistencies in the eyewitnesses' testimony.  As to Ground 10, there is likewise no support in the record that Petitioner was prejudiced in that there was a reasonable probability that his trial, appeal or state habeas results would be different if not for the lack of jury instruction number seven in his legal file.  In fact, the trial transcript confirms that jury instruction number seven was read to the jury, and Petitioner makes no arguments related to this instruction such that it would be crucial to his claims.

With respect to Ground 14, it is somewhat unclear exactly what Petitioner is arguing.  His petition and memorandum state, "IAC Counsel Allowed Court to Enter Hearsay into Record – Adam Well[s'] photo."  Doc. No. 1 at 24, Doc. No. 16 at 39.  To the extent Petitioner claims that the statements made by Detective Michael Lowery during trial constituted hearsay, trial counsel objected to Detective Lowery's testimony regarding whether Mr. Wells matched the description of the robbery suspect, and raised this argument again in the post-trial motion, arguing Detective Lowery's statements were hearsay.  *See* Doc. No. 22-1 at 103; *see* Doc. No. 22-3 at 100.  To the extent Petitioner

31

argues that Mr. Wells should have been presented in a lineup, trial counsel argued this point during cross-examination.  To the extent Petitioner argues that the photograph of Mr. Wells should not have been entered into evidence, Petitioner has failed to explain how this constituted deficient performance of trial counsel and how he was prejudiced. In sum, Ground 14 lacks merit and is conclusory.

In Ground 16 Petitioner argues that his Sixth Amendment confrontation clause right was violated because the state did not call Jesse James Jones to testify.  Mr. Jones was caught trying to cash a check of one of the robbery victims.  Mr. Jones confessed to attempting to cash the stolen check and made a statement to the police that a man that matched the physical description of the robbery suspect named "Yancey" asked him to cash the stolen check in exchange for money.  Jones offered further inculpatory statements regarding Petitioner.  However, the Prosecution was unable to locate Mr. Jones in order to testify at the trial; on that basis, trial counsel moved in limine to prevent the prosecution from bringing in any of Mr. Jones' statements to the police, which was granted.  Trial counsel also objected multiple times at trial when the prosecution tried to bring in any statements made by Jones to the police, all of which were sustained.  The Confrontation Clause protects the right of a criminal defendant to confront and cross-examine witnesses who testify against him.  *See Crawford v. Washington*, 541 U.S. 36, 50-52.  The admission of "testimonial" statements implicates the Confrontation Clause. *Id.*  Petitioner has not challenged the viability of the state to locate Mr. Jones.[17]  Because

---

[17]      Had the prosecutor located and called Mr. Jones to testify, he had significant admissible and inculpatory evidence to offer.

none of Mr. Jones's statements to the police were allowed in during trial, the
Confrontation Clause was not implicated, and Petitioner's Sixth Amendment rights were
not violated.  Thus, Ground 16 has no merit.

In Grounds 20 and 21, Petitioner argues that trial counsel was ineffective for
failing to object to the prosecutor's remarks regarding the witnesses' credibility and the
prosecutor's attempts to shift the burden of proof onto Petitioner.  With respect to Ground
20, Petitioner argues that the prosecutor "outright call[ed] Petitioner a liar during trial,"
and "swayed the jury by vouching for the strength of the prosecution['s] witnesses'
testimony and repeatedly uttering her personal opinions."  The Court agrees that some of
the prosecutor's remarks during closing were improper, such as saying that Petitioner was
"not believable" and "I think we can all agree Ada Brooks is a credible witness,"
however the impropriety of these remarks did not rise to the level of violating Petitioner's
due process.  "The relevant question is whether the prosecutor's comment 'so infected the
trial with unfairness as to make the resulting conviction a denial of due process.'"
*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*,
416 U.S. 637 (1964)).  "Moreover, the appropriate standard of review for such a claim on
a writ of habeas corpus is the narrow one of due process, and not the broad exercise of
supervisory power."  *Id.*  (internal quotations omitted).  The weight of the evidence
against Petitioner, including three independent eyewitness identifications, and additional
circumstantial evidence were more than sufficient to support the jury's finding of guilt,
reducing the likelihood that the jury's decision was influenced by the prosecutor's
comments.  *See id.* at 182 (finding that the weight of the evidence against the defendant,

33

including eyewitness and circumstantial evidence supported a finding of guilt); *see United States v. Thomas*, 664 F.3d 217, 224-25 (8th Cir. 2011) (finding prosecutor's improper remarks at closing did not deprive defendant of a fair trial given the strong evidence of guilt); *see United States v. Saad*, 888 F.3d 561, 571 (1st Cir.) (holding that upon review of the case as a whole, including the weight of the evidence against defendant, the Court was satisfied that the result would not have been different absent the prosecutor's inappropriate comments).

Additionally, the trial court instructed the jury immediately prior to closing arguments that the attorney's closing arguments were not evidence, and that the jury's deliberations should be governed by the evidence. *See* Doc. No. 22-1 at 152-53; *see also* Doc. No. 22-3 at 78, Jury Instruction No. 16; *see Darden*, 477 U.S. at 182 (finding that a prosecutor's improper comments in closing did not deprive the petitioner of a fair in trial in part because "trial counsel instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence."). For these reasons, the Court finds that Petitioner was not deprived of a fair trial, and he was not prejudiced by his trial and appellate counsel's failure to raise this claim.

With respect to Ground 21, Petitioner's claims of ineffective assistance of counsel are refuted by the record. Trial counsel objected at the Prosecutor's attempts minimize its burden of proof during trial and argued in his post-trial motion that the court erred "in overruling the defendant's objection to the State attempting to minimize the burden of proof during voir dire," and "in rejecting the defendant's offer of proof and not allowing

34

the defendant to offer testimony as to why his alibi witnesses wouldn't come forward." Doc. No. 22-3 at 100-101. Thus, to the extent Petitioner argues that trial counsel "permitted" the prosecution to shift the burden of truth, his claim is without merit.

As to Ground 22, trial counsel's failure in allowing the prosecution to strike a black juror, there is no support in the record that the prosecution "deliberately rid the jury of black jurors" as Petitioner claims.  Ground 22 is denied as conclusory.

<u>Post-Trial Issues (Grounds 19, 23)</u>

In Ground 19 Petitioner claims that his Sixth Amendment right to counsel was violated because his trial, appellate, and post-conviction counsel operated under a conflict of interest in that they all worked for the Missouri Public Defender's Office.  This claim, likely given its nature, was not raised in any state court proceeding.  However, Petitioner has failed to explain how this purported conflict of interest affected his case proceedings. Further, while all counsel were from the same office, he was represented by different counsel at each stage of the case, and the record shows that the Missouri Public Defender's office has significant safeguards in place to prevent any conflict between trial counsel and postconviction counsel.  *See* Doc. No. 22-7 at 119.  Ground 19 is conclusory and lacks merit.

In Ground 23 Petitioner claims that trial counsel was ineffective for failing to allow Petitioner to address the court at sentencing.  However, the Supreme Court has held that,

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas

35

> corpus.  It is an error which is neither jurisdictional nor constitutional.  It is
> not a fundamental defect which inherently results in a complete miscarriage
> of justice, nor an omission inconsistent with the rudimentary demands of fair
> procedure.  It does not present 'exceptional circumstances where the need for
> the remedy afforded by the writ of habeas corpus is apparent.

*Hill v. United States*, 368 U.S. 424, 428 (1962) (internal quotations and citations

omitted).  Thus, even if this claim were excused from procedural default, it would not be

cognizable for federal habeas review.

<u>Ineffective Assistance of Postconviction Counsel</u>

As discussed above, Petitioner has failed to demonstrate this his claims of

ineffective assistance of trial counsel were "substantial."  Accordingly, he has also failed

to demonstrate that his postconviction counsel was ineffective for failing to raise these

claims.  Counsel need not raise every nonfrivolous argument, rather counsel should select

those arguments most likely to succeed.  Declining to raise a potential claim is not

deficient performance "unless that claim was plainly stronger than those actually

presented."  *See Davila*, 137 S.Ct. at 2067; *see also Smith v. Robbins*, 528 U.S. 259, 288

(2000).  Given that the Petitioner's defaulted claims are not substantial, they are not

"plainly stronger" than those raised.  As such, Postconviction counsel was not ineffective.

Petitioner has failed to demonstrate cause for his procedural default under *Martinez*, thus

the Court will not consider the merits of Petitioner's defaulted claims any further.[18]

---

[18]     As discussed, trial counsel properly objected and preserved grounds 1, 14, 15, and
21.  To the extent Petitioner claims appellate counsel was ineffective for failing to raise
these grounds, the Court disagrees.  Appellate counsel need only raise claims they believe
are most likely to succeed, and as discussed, there is little support in the record to support
Petitioner's claims in grounds 1, 14, 15, and 21, as such these claims were not "plainly

**<u>Claims Preserved for Review</u>**

The Court and Respondent agree that Petitioner has properly exhausted Grounds 11, 17, and 18.  Respondent asserts, however, that Grounds 4 and 5 were not properly exhausted, but the Court disagrees.  In order to exhaust a federal claim, "the petition must present the same facts and legal theories to the state court that he later presents to the federal courts." *Stephen v. Smith*, 963 F.3d 795, 801 (8th Cir. 2020).  While Grounds 4 and 5 in Petitioner's federal petition initially allege ineffective assistance of counsel, beyond the title of each claim, it is apparent Petitioner is challenging his Fifth Amendment right to due process, specifically with respect to the suggestibility of his lineup identification and his Sixth Amendment right to counsel at the live lineup, both of which were raised on direct appeal.  "A petition filed by a *pro se* petitioner should be 'interpreted liberally and…should be construed to encompass any allegation stating federal relief." *Harris v. Wallace*, 984 F.3d 641, 647 (8th Cir. 2021) (citing *Jones v. Jerrison,* 20 F.3d 849, 853 (8th Cir. 1994) (citations omitted)).  Thus, in construing the petition liberally, the Court will consider Petitioner's Grounds 4 and 5 to the extent they argue that that Petitioner's Fifth and Sixth Amendment rights were violated with respect to his live lineup.

Petitioner has also requested an evidentiary hearing with respect to these claims, however because the record before the Court conclusively demonstrates that Petitioner is

---

stronger" than those raised by appellate counsel.  Therefore, appellate counsel was not ineffective.

not entitled to relief, the Court will deny Petitioner's properly preserved claims without a hearing.

Ground 4: Admission of Lineup Identifications

In Ground 4, Petitioner claims that his due process rights were violated given the suggestiveness of his live lineup when the police officers physically held him during the live lineup and turned his head toward the one-way mirror.  With respect to this claim the Missouri Court of Appeals held,

> Defendant also argues that the live lineup in which Patterson and Brooks identified him was unduly suggestive because police officers were physically holding him and forcing his face towards the glass.  The State counters, and we agree, that any suggestiveness was due to Defendant's behavior.  A defendant may not claim that a lineup is impermissibly suggestive if the suggestiveness is due to the defendant's own obstinate behavior. *See State v. Lanos*, 14 S.W.3d 90, 95 (Mo.App.E.D. 1999) ("Appellant cannot challenge the suggestiveness of a lineup due to circumstances that he caused to become necessary.")  *See also State v. Radford*, 559 S.W.2d 751, 753 (Mo.App.1977) ("[A]ny claim of suggestiveness was due to the defendant's own contumacy and personal refusal to behave unobtrusively.")  Point denied.

Doc. No. 22-6 at 10.

The state appellate court's factual determinations regarding the circumstances surrounding Petitioner's lineup are reasonable and consistent with the record, which is well developed on this matter.  Thus, the Court may only grant relief if the state court's decision was contrary to or an unreasonable application of federal law.  *See Williams*, 529 U.S. at 364.  Petitioner has failed to demonstrate what clearly established federal law the state court's decision was contrary to.

In determining whether to suppress an eyewitness identification, due process

"requires courts to assess, on a case-by-case basis, whether improper police conduct

created a 'substantial likelihood of misidentification.'"  *Perry v. New Hampshire*, 565

U.S. 228, 239 (2012) (quoting *Neil v. Biggers*, 409 U.S. 188, 201 (1972)); *see also*

*Mason v. Brathwaite*, 432 U.S. 98, 116 (1977).  This requires a two-part analysis.  First,

the Court must determine whether the identification was unnecessarily suggestive.  *See*

*Perry*, 565 U.S. at 238-39 ("Due process concerns arise only when law enforcement

officers use an identification procedure that is both suggestive and unnecessary"); *see*

*also United States v. Rulford*, No. 0:20-cr-00244-PAM-KMM, 2021 WL 4813235, at *6-

7 (D. Minn. Aug.20, 2021) (determining whether a suggestive identification was

necessary).  The unnecessary suggestiveness must be "police-arranged."  *Perry*, 565 U.S.

at 249 (Thomas, J., concurring) ("The Court correctly concludes that its precedents

establish a due process right to the pretrial exclusion of an unreliable eyewitness

identification only if the identification results from police suggestion."); *id.* at 250

(Sotomayor, J., dissenting) ("The Court today announces that that rule does not even

'come into play' unless the suggestive circumstances are improperly 'police arranged.'").

Second, if the Court determines that the identification was impermissibly and

unnecessarily suggestive, then the Court must determine whether the eyewitness

identification was unreliable.  *United States v. Heard*, 951 F.3d 920, 925 (8th Cir. 2020)

(citing *United States v. Mitchell*, 726 F. Appx. 498, 501 (8th Cir. 2018)) ("[E]ven if the

line-up is inherently suggestive, the line-up will be admissible as long as it is not

impermissibly suggestive *and* unreliable."); *see Brathwaite*, 432 U.S. at 113 (when an

"identification is reliable despite an unnecessarily suggestive [police] identification procedure," automatic exclusion "is a Draconian sanction…that may frustrate rather than promote justice.").

The *Brathwaite* Court explained that where the "indicators of [a witness'] ability to make an accurate identification" are "outweighed by the corrupting effect" of law enforcement suggestion, the identification should be suppressed. *Braithwaite*, 432 U.S. at 116. The factors affecting reliability are (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of witness' prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *Id.* at 114.

### Impermissible Suggestiveness

There is no doubt that Petitioner's lineup was suggestive. However, the suggestive circumstances of Petitioner's lineup were the direct result of Petitioner's own actions. Petitioner admits as much. Thus, the state court found that the lineup was not *unnecessarily* suggestive, because Petitioner's behavior necessitated the officer's actions during the lineup. Further, the officers had an important investigative need to have the victims view the suspect while their memories were still fresh so the prosecutor could determine whether to bring charges. And there was no reason to believe that the situation, specifically, Petitioner refusing to comply without appointed counsel, would be any different in a day or two. Counsel was not going to be appointed until charges were filed, and charges would not be filed until a lineup occurred. Thus, one could find that while suggestive, the lineup as conducted was necessary. The Eighth Circuit has

40

frequently found suggestive identifications necessary in showups, which are arguably at least as suggestive as Petitioner's lineup. *Heard*, 951 F.3d at 925 ("'Necessary incidents of on-the-scene identifications, such as the suspects being handcuffed and in police custody' or having a light shone on their face 'do not render the identification procedure impermissibly suggestive.'"); *see United States v. Henderson,* 719 F.2d 934, 937 n.4 (8th Cir. 1983) ("The need for quick and efficient police investigations and arrests, and the desire to release persons mistakenly apprehended, may offer some justification for a showup.").

### Reliability of Identification

Even if this Court assumes that the lineup was unnecessarily suggestive, the lineup is still admissible if it was nonetheless reliable. Under *Braithwaite*, if the indicators of a witness' ability to make an accurate identification are not outweighed by the corrupting effect of law enforcement suggestion, the identification need not be suppressed. 432 U.S. at 114.

Here, both witnesses had a good opportunity to view the perpetrator at the time of the crime and were paying attention because they were the individuals being robbed. Mr. Patterson testified that he "got a good look at" the robber even though their interaction was relatively brief. *See* Doc. No. 22-1 at 96-99. He further testified that his robbery occurred about 4:30 p.m. on February 3, 2010; the sun was shining bright; the robber approached him in the parking lot and they were face-to-face, and only about 6 inches apart when the robber demanded Mr. Patterson's wallet. *See* Doc. No. 22-1 at 74-75, 96-102.

Ms. Brooks testified that her robbery occurred around 2:15 p.m. on February 5, 2010, and the robber approached her in the parking lot.  She further testified that she and the robber were face-to-face, she looked at his face "for a minute" prior to seeing the gun he had pulled out.  *Id.* at 76-77.  When cross-examined on this issue, Ms. Brooks testified to the following,

> DEFENSE COUNSEL:  Okay, so the amount of time that you saw this guy was only a few seconds, right?
>
> MS. BROOKS:  It was only a few minutes that I saw him, but I saw his face.
>
> DEFENSE COUNSEL:  Okay. Real fast, right?
>
> MS. BROOKS:  I saw his face and I remember his face.

*Id.* at 78.

Further, both witnesses gave fairly accurate descriptions of the robber.  Mr. Patterson described the robber as a black male, 6'0" to 6'2", 160-180 pound, 40-45 years old, wearing a black hooded sweatshirt.  *See id*. at 97, 103-04.  Ms. Brooks described the robber as a tall, young man with brown skin.  *See id.* at 105-07.  Petitioner is a black male, 6'3", he was 35 years old and weighed approximately 215 pounds at the time of the robbery.

Additionally, both witnesses demonstrated high levels of certainty at the identifications.  Mr. Patterson testified that he did not have any hesitancy in picking Petitioner out of the lineup, and "[h]is face just jumped right out at me."  *Id.* at 101.  Ms. Brooks testified that she immediately recognized Petitioner in the lineup.  *Id.* at 77.  Lastly, only a few days elapsed between the robbery and the identifications; the lineup

occurred 6 days after Mr. Patterson's robbery and 4 days after Ms. Brooks robbery.

Further, both eyewitnesses who identified Petitioner in the lineup had previously

identified him in photo arrays,[19] the suggestiveness of which is not challenged here, and

both testified at the motion to suppress hearing that the presence of the police officers in

the lineup and Petitioner's behavior did not influence their identification.  Given these

factors, the Court concludes that there was not " a substantial likelihood of irreparable

misidentification." *Perry*, 565 U.S. at 239.  Thus, even if the lineup was unnecessarily

suggestive, it is outweighed by the reliability of Mr. Patterson's and Ms. Brook's

identifications.  As such, the state court's decision to admit these out-of-court

identifications was not unreasonable, and Ground 4 is denied.

Ground 5: Sixth Amendment Right to Counsel at the Lineup

In Ground 5, Petitioner argues that he should have been afforded counsel during

his live line up in accordance with the Sixth Amendment because a live lineup is a

"critical stage" for which his right to counsel attaches.  Despite Petitioner's contentions,

it is well established federal law that the Sixth Amendment right to counsel does not

attach until prosecution against the accused has commenced.  *Rothgery v. Gillespie*

*County, Tex.*, 554 U.S. 191, 198 (2008); *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).

For purposes of the right to counsel, the Supreme Court has held that commencement

means "the initiation of adversarial judicial proceedings—whether by way of formal

---

[19]     The photo arrays shown to Patterson and Brooks were challenged by Petitioner in his direct appeal, but the appellate court found that the photo arrays were not unduly suggestive.  Petitioner did not challenge the photo arrays in his federal habeas petition.

charge, preliminary hearing, indictment, information, or arraignment." *United States v. Gouveia*, 467 U.S. 180, 188 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).

It is undisputed that Petitioner had not been charged, nor had any adversarial judicial proceeding been initiated at the time of his live lineup.  Thus, the Missouri Court of Appeals properly applied clearly established federal law in determining that Petitioner's Sixth Amendment right to counsel had not attached.  As such, Ground 5 is denied.

Ground 11: Trial counsel was ineffective for failing to investigate and present Shermon Felton as an alibi witness

In Ground 11, Petitioner argues that trial counsel was ineffective for failing to present Shermon Felton as an alibi witness.  Petitioner claims that Shermon Felton's testimony during the state court's postconviction evidentiary hearing confirmed Petitioner's alibi for Ada Brook's robbery.

In order to demonstrate ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance was objectively unreasonable and (2) he was prejudiced as a result of counsel's deficient performance.  *Strickland*, 466 U.S. at 669.  There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The standards of review for both *Strickland* and § 2254 are "highly deferential," thus, "when the two apply in tandem, review is 'doubly [deferential]." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential

standard." *Id.*

With respect to performance, Petitioner testified under oath at his sentencing that his trial counsel had called all potential witnesses, but they "didn't come forth."  Doc. No. 22-2 at 6.

> THE COURT:  And did you give the names of any witnesses to your lawyer that you thought might be helpful, or were there any?
>
> PETITIONER: Yes, sir.
>
> THE COURT: All right. Do you recall were they called as you asked them to be called?
>
> PETITIONER:  Yes, sir.  They was called, but they didn't come forth, I guess.
>
> ***
>
> TRIAL COUNSEL:  I said that you had meant called to testify, not called on the phone.  We tried to call a bunch of them on the phone.  He has six or eight witnesses.  They just didn't pan out.
>
> THE COURT:  Did you discuss with your lawyer what these people would say?
>
> PETITIONER:  Yes, sir.
>
> THE COURT: Do you have any reason to think that your lawyer did not make effort to contact them?
>
> PETITIONER: No, sir.

*Id.*  At the evidentiary hearing, trial counsel testified that he assigned his investigator to contact the witnesses identified by Petitioner, but they were unable to locate any of them. He also testified that he did not subpoena Shermon Felton to testify at trial.  Doc. No. 22-7 at 113- 16.

With respect to prejudice, Shermon Felton testified at the evidentiary hearing that he specifically remembered seeing Petitioner in between classes on Friday, February 5, 2010, but later testified that he did not have classes on Friday.  The motion court found the credibility of the Mr. Felton to be minimal and his testimony to be entitled little weight.  The state appellate court affirmed.  "Federal habeas review 'gives federal courts no license to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'"  *Perry v. Kemna*, 356 F.3d 880, 885 (8th Cir. 2004) (quoting *Marshall v. Longberger*, 459 U.S. 422, 434 (1983)).

In light of Petitioner's and trial counsel's statements that attempts were made to contact Mr. Felton prior to trial and the incredible testimony given by Mr. Felton at the state evidentiary hearing, the state court's determination was reasonable in that Petitioner could not demonstrate deficient performance or prejudice.  Thus, Ground 11 is denied.

Ground 17: Trial counsel was ineffective in failing to object when the jury saw Petitioner in cuffs and shackles in the hallway and saw him wearing an inmate wristband during trial

In Ground 17, Petitioner claims that trial counsel was ineffective for failing to object when the jurors allegedly saw Petitioner handcuffed, shackled, and wearing an inmate wristband.  Aside from Petitioner's claims, there is no evidence in the record that the jurors saw Petitioner in fetters or his inmate wristband.  Trial counsel testified at the evidentiary hearing that he had no recollection of this incident nor of the Petitioner informing him of this incident, but that his general practice would be to object and make a record under such circumstances.  The motion court also found that Petitioner's claim with respect to his wristband was speculative because he wore long sleeves during trial

46

and there was no reason to believe the jurors would have known what the wristband was or attached any significance to it.  The state appellate court also held that even if the jurors had seen Petitioner in restraints as claimed, a mistrial would not be appropriate because "brief, inadvertent exposure of the jury of a handcuffed defendant while he is being taken from one place to another does not deprive defendant of a fair trial."  Doc. No. 22-10 at 7 (citing *State v. Taylor*, 298 S.W.3d 482, 512 (Mo. banc 2009)).

Respondent acknowledges that due process prohibits the use of unjustified, visible shackles during trial, but argues that such restriction does not apply to inmates being transported outside the courtroom because "[w]hile shackling during trial may send the message that a defendant is violent or dangerous, restraints during transportation are standard and do not send the same message."  Doc. No. 22 at 21.  The Supreme Court has held that a court cannot routinely place defendants in shackles or other physical restraints visible to the jury during the guilt or penalty phase of a trial.  *Deck v. Missouri*, 544 U.S. 622, 626-33 (2005).  The *Deck* court further explained that this constitutional requirement is not absolute and "[i]t permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling."  *Id.* at 633.

Here, whether the jury even saw Petitioner in shackles is speculative, and even if they did, it was only for a brief period when Petitioner was being transported in the hallway; he was not "routinely" placed in shackles during the trial.  Moreover, trial counsel testified he did not recall Petitioner advising him of this event.  Thus, the state court's finding that trial counsel's performance was not deficient, and in the alternative,

Petitioner was not prejudiced, was a reasonable determination.  Ground 17 is denied.

> Ground 18: Trial counsel was ineffective for failing to call Ken Nelson as a witness at sentencing

Lastly, Petitioner argues that his trial counsel was ineffective for failing to call Ken Nelson as a witness at sentencing.  Ken Nelson did not testify at the state evidentiary hearing, but his testimony was submitted to the court via deposition.  Mr. Nelson testified that Petitioner was one of his best employees, was a "very conscientious young man," and "would go overboard to help people."  Ken Nelson Dep., Doc. No. 22-11 at 137-60.  Petitioner argues that if Mr. Nelson had been called to testify during sentencing, he would have received a lesser sentence.  The motion court found that the testimony of Mr. Nelson was unlikely to have changed the outcome of the sentencing and the assessment of trial counsel that the Petitioner's assessment "was pretty good" in light of his prior criminal record was an accurate assessment, noting that the State asked for 30 years on each count to run concurrently.  Doc. No. 22-7 at 157-58.  The appellate court affirmed.

Petitioner failed to demonstrate that there was "a reasonable probability that the result of the sentencing proceedings would have been different" if trial counsel had called Mr. Nelson to testify at sentencing.  *See Williams v. Taylor*, 529 U.S. at 399.  The state court's determination that Petitioner was not prejudiced, and therefore did not receive ineffective assistance of counsel, was reasonable.  As such, Ground 18 is denied.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Yancey L. White for a writ of habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G.  FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of March, 2023.